Warblaw, J.
delivered the opinion of the Court.
This case was submitted to the jury upon certain questions of fact concerning fraud, and the defendant, the appellant, has disputed both the propriety of the submission, and the finding of the jury. He has, however, brought also before this Court other matters, and the plaintiff has here contended, that he, and not the defendant, has ground of complaint; for fhat upon some of those matters, the law would clearly sustain the verdict, whatever conclusion might be attained in reference to the questions which were submitted to the jury. It will be necessary, then, to examine various points, and in giving the opinion of this Court, I will range my remarks under three heads: 1. The registry laws discussed in the case, particularly those of Georgia. 2. The rights of a mortgagor and of a mortgagee under the laws of Georgia, and under outlaws concerning a mortgaged chattel, removed hither from Georgia. 3. Possession of the chattel by the mortgagor after breach of the condition, and other circumstances urged as badges of fraud.
1. An Act of the Georgia Legislature was intended, as its preamble shews, to prevent frauds and oppressions, by removing doubts which prevailed concerning the existence of any law which requires mortgages to be recorded. Its second section enacts that every mortgage of personal property shall be recorded in the Clerk’s office of the Superior Court of the county in which the mortgagor resided at the time of its execution, within three months from its date. Its fourth section provides, that upon failure to record any mortgage within the time specified, all judgments obtained before the foreclosure of the said mortgage, and also any mortgage executed after the same and duly recorded, shall take lien on the mortgaged property in preference of the said mortgage.
Prince’s 4 Geó. Rep 161. ’
Previous Georgia Statutes, 1755 and 1765, had directed j^at aq conveyances and mortgages, whether of real or personal property, should be registered; and had given to the conveyance or mortgage first duly registered, preference over any prior one not duly registered. Notwithstanding the doubts expressed in the preamble of the Act of 1827, the Supreme Court of Georgia, in the case of Neal & others v. Kerrs & Hope, has decided that the Act of 1755 is still effective, and that the 4th section of the Act of 1827 operated no change in the law, except the giving to judgments' a priority which they would not otherwise have had.
A bill of sale made by a mortgagor to a subsequent bona fide purchaser, (like the one which was made in the case before us,) would, then, if it was regularly registered, and all the transactions occurred in Georgia, under express statutory provisions “ take place and be recoverable,” before a mortgage either unregistered, or registered after the prescribed time, and after registry of the bill of sale. But where neither bill of sale nor mortgage of a slave has been regularly registered, (as in the case before us,) under the laws of Georgia, would preference be given to the one that might first be registered after the prescribed time, or would the mortgage under judgment of foreclosure (hereafter to be spoken of) have a chance of settling the contest in its favor, whilst no similar chance is offered to the bill of sale; or would the right, derived from priority of date, continue in the mortgage unaffected by any equitable considerations in behalf of the bill of sale? And how far'would the result be varied here, by the removal of the slave from Georgia and his sale in South Carolina ?
No Georgia statute has fallen within my notice, which gives any preference by reason of registry after the prescribed time.
A judgment of foreclosure had in Georgia, can have no relation back to alter the rights of the parties before us, as they subsisted here at the time of the conversion for which this suit is brought; and I will not venture to form any opinion as to what might be its effect against a purchaser, where all the transactions were in Georgia.
In a contest between an unregistered mortgage and a subsequent unregistered bill of sale, if priority is transferred from the mortgage to the bill of sale, the effect must be produced by registry laws, or by thosein connexion with other laws.
Concerning the Georgia statutes before cited, and registry laws in general, these observations may be made:
First: Without some express provision, a conveyance or mortgage (wherever a mortgage is either a conveyance subject to be defeated by subsequent payment, or a contract under which a title may take effect upon non-payment) even when unregistered, is usually held to have preference over a *417 subsequent judgment; because a conveyance or mortgage is, withouf registry, good between the parties, and the. lien of thei judgment, created by law, extends only to the interest which the person against whom it is recovered, has, not to that interest which he has previously transferred.
Second. Registry is a substitute for notoriety of conveyance, and thus a guard against fraud; it can have application only to writings, and in general contemplates those written memorials of transactions which have been made to serve the purpose of public solemnities. Wherever the law permits a conveyance to be made by delivery only, without writing, evidence of sale, delivery and continued possession afterwards by the vendee, shows a conveyance which in the nature of things cannot be registered; to which the visible evidence of ownership attending it, stands in the place of registry ; which is valid when it is made, ought not to be invalidated by any formalities that may be given to a subsequent conveyance, and in all contests with other conveyances should be treated as if its making comprehended its registry. If a writing attended the delivery of the thing sold, but in no wise affected the nature or validity of the title and contract which would have subsisted without writing, the neglect to register the writing can only produce the same state of things which would have existed if there had been no writihg; and should then in no wise affect the rules that would have applied if there had been no writing, where there can be no conveyance writing; or where by the terms of the contract, delivery and possession in the vendee do not take place at the making of the contract, or take place under some agreement which is expressed in writing, and would not be inferred from possession; of where a writing, as a symbol, and not the thing sold, is delivered; registry is applicable, and may well be held to be indispensible if there be not actual notice.
The Georgia Act of 1827 relates exclusively to mortgages; that is to contracts by which liens, distinguished from titles, are created. It settles the effect of non registry upon conflicting liens, but passes unnoticed the case of a conflict between a lien and a title. From its provision in favor of subsequent judgments and subsequent mortgages duly recorded, it is argued that subsequent sales shall not have preference. Prior sales have preference, for such is their right by law, independent of registry statutes. Subsequent sales made by writing duly registered have preference, for it is given to them by the statute of 1755. The maxim expressio unius est exdutio alterius, does not then apply to the fourth section of the Act of 1827. Subsequent sales, which take effect by delivery, whether an unnecessary writing unregistered has been made or not, various members of the Georgia bar, with whom I have conversed, think, would have preference, too : *418 but the point has never been decided by the Supreme Court of Georgia.
ll Stat. 256.
2 Stat. 137.
A slave, like another chattel, may in Georgia be transferred by delivery only; the same registry laws which embrace a slave, embrace also a horse, a bale of cotton, or other chattel which passes readily from hand to hand ; the mortgagee of a chattel has, in Georgia, a contingent lien upon it, made effective by judgment of foreclosure, but neither possession nor the right of possession; and his mortgage, if he withholds it from the registry which the law has appointed for prevention of fraud, becomes a means by which third persons may be readily deceived ; the extreme hardship of holding under these circumstances that a bona fide purchaser, who took possession of the chattel from the mortgagor holding it as owner, should yield to the prior lien of the mortgage, forces itself upon the understanding, and is not at all weakened by the circumstance that the purchaser had neglected to register some written evidence of the sale and delivery to him, which he need not have taken at all. Such a holding seems not less opposed to justice and policy, than would the conclusion that a subsequent absolute conveyance duly registered, should not prevail against an unregistered mortgage, but a subsequent mortgage duly registered should do so: — which conclusion the Georgia Court has obviated by construing the Act of 1827 as only part of a system, to which the Act of 1755 also belongs.
But if reasoning like this should show that the subsequent sale made by the mortgagor in the case before us, would by the law of Georgia have preference over the prior mortgage, the result would ensue, not from any provision of a registry Act, standing alone, but from badges of fraud, which the common law detects in a secret lien upon a chattel, unaccompanied by possession, and made mischievous through neglect of the course prescribed by wise preventive legislation. Of these badges I will speak more hereafter. As to the Georgia registry Acts, it appears that the defendant has no ground of complaint against the opinions held on the Circuit, and that the plaintiff cannot have a decision in his favor upon these Acts only.
The South Carolina registry Acts have also been adverted to, and it has been supposed by the plaintiff, that under them he, as a purchaser in this State, stands in a better position than if the whole transaction had occurred in Georgia. Our Act of 1843 provides that no mortgage of personal property shall be valid, so as to affect the rights of subsequent creditors or purchasers for valuable consideration without notice, unless the same shall be recorded as there directed within sixty days. Mention is made of a mortgagor who resides “ without the State,” but manifestly only mortgages of property “ located hero at the time the mortgage is executed,” are contemplated. A previous Act, of 1698, had provided that *419 the sale or mortgage of “ negroes, goods or chattels,” which shall be first recorded, shall be taken to be the first mortgage. In the case before us, the bills of sale taken in this State have not been registered; but it has been argued that, as the mortgage was never registered here, the purchaser in this State cannot, under the Act of 1843, be affected by it. The mortgage is a contract which was made in Georgia between citizens of that State, to be performed there. It must have validity according to the laws of Georgia, and to them we must look for the formalities to be observed and acts to be done to give it effect — unless it could be shewn to be a contract which in its nature is injurious to citizens of this State. If a sale made in Georgia, where the sale here was made, would have been affected by the mortgage, then the sale made here is so affected. The registry Acts of this State may then be laid out of view.
1799, Prince’s DiS-433 ■
4 Geo- R(jP-f0reCcited.6"
C. and also iy,’i93.
2. The Georgia laws concerning foreclosure, and the rights which belong respectively to mortgagor and mortgagee of a chattel, under these laws and under our own, have also been brought into discussion.
A Georgia statute provides, as to mortgages of real estate, a summary mode of foreclosure, by order of sale after return of a rule served: and as to mortgages of personal property, provides that the mortgagee shall make an affidavit before a Judge, of the amount of the debt for’which the mortgage stands as a security, which affidavit shall be annexed to the mortgage: whereupon the Clerk of the Court shall issue execution as upon a judgment, and the sheriff shall, under that execution, levy upon the mortgaged property, sell it after advertisement, and apply the proceeds to discharge the amount due on the mortgage with costs, paying the surplus if any to the mortgagor. If there should be dispute about the amount due, the Judge shall postpone the sale, upon bond with security being given by the mortgagor, and the question shall be tried by a jury.
It has been decided in Georgia, that this proceeding before a Judge, called judgment of foreclosure, is a judgment, and, even if the mortgage has not been registered, establishes a lien upon the mortgaged property, which, in conflict with other judgments, ranks according to its date, and in conflict with a prior mortgage, neither registered nor foreclosed, has, under the Act of 1827, the precedence which is given to subsequent judgments. And it has been further decided there, that a mortgage is nothing more than a security for the payment of the debt — that no estate passes by it, but the title to the mortgaged property remains in the mortgagor, until closure and sale in the manner prescribed, as above mentioned.
From these premises the plaintiff has argued here, that the *420 mortgagee has a mere equity, and that a purchaser who has acquired title from the mortgagor without notice of that equity, is not affected by it; that the title is in the purchaser, and it cannot be resisted at all in a Court of Law by an equity; and even in a Court of Equity would prevail, when it has against the mortagee’s equity the aid of the rebutting equity which arises from purchase for valuable consideration without notice. It will be observed, that this argument (except perhaps the influence which notice of the mortagee’s supposed equity would have on the purchaser’s title) would apply equally to a mortgage that had been lawfully registered in Georgia, and to one that, (as in the case before us) had not been; for under neither has the mortgagee, by the law of Georgia, any title or right of possession. Due registry would give constructive notice to a purchaser in Georgia; whether notice to a purchaser' in this State could be implied from a registry in Georgia, it is unnecessary to consider in this case.
But our own statutes concerning mortgages of j’eal estate have made us familiar with the idea of a mortgage as a mere security for the debt; the title remaining in the mortgagor. It does not follow, that without some estate, the mortgagee must have a mere equity, such as the law Court cannot notice. He has by his contract a lien, which under certain conditions may be turned into a title in the purchaser under it; more like the lien of a judgment creditor upon the goods of his debtor, than like the equity of a cestui que trust in property, of which the whole legal title and interest remain in a trustee. He has not an estate defeasible upon condition, but an interest which, by condition, may become an estate,; an interest which constitutes an incumbrance, and which, if it attached at its creation, adheres to the property in the hands of a purchaser, (if it is not defeated by some matter subsequent,) as much as would the lien under a judgment that bound the property at the time and place of sale, although it was unknown to the purchaser. The lien of a judgment is territorial, and in that it differs from a lien created by contract.
Is not, however, the intervention of some Court necessary to give effect to the mortgagee’s lien 1
A creditor’s lien under judgment has effect through judicial process and the action of a public officer; in Georgia the mortgagee’s lien, too, has effect by-a judicial act, and a process of a Court. The Georgia proceeding for foreclosure cannot be had in this State; and the plaintiff hence contends that, at most, the mortgagee of a chattel under a Georgia mortgage might go into our Court of Equity to have the title of the mortgagor transferred, but has no right of seizure, such as exists here under a South- Carolina mortgage of a chattel, which conveys a title to the mortgagee, that will sustain an action of trover against a stranger, even before preach of con *421 dition, and that authorises the mortgagee, of his own mere motion, to take possession from the mortgagor after breach.
, 0/Wws 3d edit, sects. 2|°. 263i 3 l"
Conf. of
When a contract is made at the place where its perform-anee is expected, more especially if that place be the domicil of the parties to it, the lex loci contractus governs as to the nature, the obligation and the interpretation of the contract, and as to its effects, but not as to the manner of administering remedies.
Under nature, are comprehended all those qualities properly belong to the contract, and by law or custom always accompany it or inhere in it. By effects, are understood the rights and duties which result from the contract, of which are sometimes collaterally various accompanyments or incidents, such as liens in rem, distinguished from a general right priority in payment, which would have attached by the lex loci , but exists not by the law of the forum.
The right of seizure, as it is exercised in this State, is not a legal proceeding or remedy administered by a forum, but is an incident to the estate which was conveyed to the mortgagee; and not existing by the lex loci which governs the mortgage before us, would not, it is said, attach to the mortgaged property upon its removal to this State. On the other hand, a Georgia mortgage is in form just like a South Carolina mortgage; interpreted by its own terms, without reference to Georgia law, it must be understood to convey an eslate to the mortgagee: as to the ultimate effect, the subjection of a specific property to a particular debt, it is immaterial whether the estate be considered to be in the mortgagor or mortgagee, for the difference is only in the mode of proceeding to attain the same result, — the sale, satisfaction of the debt, and payment of the surplus to the mortgagor. Seizure is a means of redress by mere act of the party — in effect a remedy which our law allows as a result of the contract. The summary judicial proceeding which the Georgia laws provide, cannot be had here ; and the exercise of a right which is consistent with the terms of the contract and familiar to our practice, more nearly attains the effect of the mortgage according to the lex loci, than would the tedious remedy which the mortgagee would be driven to, if the right of seizure should be denied to him, because it was not given to him by the lex loci, which provided an adequate substitute.
This question, concerning the mortgagee's right to seize, is the most difficult one in the case, and I am glad that the defendant has no reason to complain of the instructions regarding it, and that the plaintiff’s verdict rests on a surer ground, in no wise influenced by any decision that might be made of it. I am, however, confirmed in the inclination that I have to sustain the opinion which I expressed on the Circuit, that the mortgagee might adopt seizure as a remedy here, by consider *422 ation-s growing out of the fact that the mQrtgagor voluntarily brought the pioperty within our jurisdiction. He should not complain of our modes of proceeding; and the circumstances which a purchaser, from him, may urge to shew that the lien is destroyed, apply not to alter the mode of enforcing it, if it be yet effective.
On the other hand, however, it is of some consequence- to observe that the mortgagee, after seizure, did not sell and pay the surplus, if any, to the purchaser, as in equity he should have done, but having taken possession he conveyed the slave to another jurisdiction; seeming to regard the seizure, not as a remedy given by our laws, but as the exercise of a right growing out of his contract, or as a high handed act to do himself justice.
B. We come, then, to consider the questions of fact concerning fraüd, which were submitted to the jury ; seeing that the defendant’s complaint upon other grounds is fruitless, and that upon no other ground can the plaintiff’s right to prevail, be clearly perceived.
On the Circuit, the jury were premonished that the absence of any provision, in the Georgia Registry Acts, for the protection of a subsequent purchaser, should induce especial jealousy in looking upon any improper possession by the mortgagor, or other badge of fraud ; and that there was nothing upon the face of the mortgage, in this case, which could have informed a stranger who read it, that the condition therein mentioned had been subjected to the change of time which the renewal of the note produced; and then they were instructed that if it should appear to them that there were any badges of fraud, connected with the mortgage, not sufficiently explained, and that (however free from intentional deceit the defendant may have been) the enforcement of his mortgage would, under the circumstances which he has contributed to produce, be a fraud upon an innocent purchaser, then the verdict might be for the plaintiff.
The false appearance, which is produced by one, to whom personal property is assigned, permitting the assignor to retain possession, in general raises a presumption of fraud.— This presumption may, in our State, be rebutted (except in cases not now to be considered) by proof, that the retention of possession was consistent with the terms of the contract; and in a Court of law, wherever the badges of fraud are not conclusive and irrebuttable, they, with all matters of explanation, go to the jury for decision. A mortgagee of a chattel may then, in a contest with a purchaser, if he has not incurred the penalty of some registry Act, explain the possession of the chattel by the mortgagor, before breach of the condition of the mortgage, by shewing that such possession was contemplated by the mortgage: and the possession of a mort *423 gagor, even after breach of the condition, is not looked upon as implying fraud in the same degree that the possession of, a vendor, after absolute sale, would do. Our cases in the Court of Equity, Gist v. Pressley, Maples v. Maples, and Bank v. Gourdin, shew the grounds of this distinction, and shew also, in favor of a mortgagee, a difference between a' slave and other chattels in these respects, to wit: a slave is often conveyed for a term, or hired, or.otherwise held by one who is not owner; and, therefore, possession of a slave is not so unequivocal a criterion of title, as is the possession of other chattels; the wages of a slave are usually much greater than the interest on his value, and there may be entire fairness in leaving a mortgaged slave in possession of the mortgagor, in hope of his being able to work out the payment of the debt. All these cases, however, whilst they oppugn the notion of possession by the mortgagor after breach being conclusive evidence of fraud, acknowledge that it is a matter requiring explanation, which will be entitled to weight, according to circumstances, in an examination of the question of fraud. In like manner, the late case in this Court of Fishburne v. Kunhardt, recognizing the authority of the equity cases, whilst it declares that possession of a slave, by a mortgagor, after condition broken, is not conclusive evidence of fraud, speaks of such possession as “one among the'cir-circumstances, to enable the Court and jury to judge of the transaction” — as “ a badge or circumstance to be judged of by the jury.”
328 ^Rice’s Eq.’300; 1 sPe^s Eq.
2 Speers, 556.
In the case before us, the undisturbed possession by the mortgagor, in the immediate neighborhood of the mortgagee, after the 6th May, 1846, (when the note, secured by the mortgage, became payable, and when by the Georgia process of foreclosure, judgment and levy might have been had,) was submitted to the jury as one among other circumstances to be weighed by them. This circumstance, the defendant insists, was sufficiently explained by the renewal of the note. Let us scan this. The mortgagee is required to explain a prima facie badge of unfairness; he resorts to his mortgage, to shew a consistency between the appearances he permitted, and the nature or terms of the contract; that shews why possession, by the mortgagor, until 6th of May, should have been allowed : but neither the renewal of the note, nor the probability of its renewnal, is hinted in the mortgage; the explanation, then, is not by any thing upon the face of the mortgage, or any thing which the law annexes as an ordinary incident to such a contract, but by evidence of private arrangements, made by the parties to the contract, whereby its stipulations have been extended, and varied as to time. The utmost the mortgagee could ask, would be to be judged in the same way as if he had, by conforming to *424 the registry laws, given notoriety to. his lien; and if he had -¿one S0) no personj by reading his mortgage, could have learnt from it that the possession of the mortgagor was to continue undisturbed for six months after 6th May. From such continued possession, a stranger might well have inferred payment of the debt, and if to that had been added the mortgagor’s possession of the original note, (which, however, did not appear in this case, although partial payment, and renewal for the balance, did appear,) the inference would have been irresistable. The case of Alston v. Alston (more fully reported 2 Rich. 478,) shews that it is always understood that a note, endorsed for the maker’s accommodation, to be discounted in Bank, is to be renewed, and although each successive renewal is a new contract, it is not an ex-tinguishment of the debt; therefore, that such renewal will not destroy the security of a mortgage or other guaranty, which was given to indemnify the endorser when the original note was discounted. But in a question like this, between the mortgagee and a purchaser, it is material to enquire whether a parol agreement, between the mortgagor and mortgagee, would, of itself, sufficiently answer the purchaser’s complaint, that he had been misled by a possession, seemingly inconsistent with the instrument under which the mortgagee claims : and if it would not, whether the mortgage shews the circumstances that would incorporate into it the subsequent arrangement which extends the time of indulgence: Here there was nothing on the face of the mortgage to shew that the original note was made for the accommodation of the mortgagor; nor that it was to be discounted in Bank; nor that the mortgagee was endorser — there was simply the recital of a note, which the mortgagor owed to the mortgagee, payable at six months. The explanation, therefore, to say the least, was not so satisfactory, that the circumstance of possession retained, after .the original contract contemplated payment, should not, with the explanation, have gone to the jury to be judged of.
2 Hill, 362.
The defendant, however, thinks that there was not a single circumstance or fact, in the case, upon which to build a presumption of fraud, and to shew that the verdict of the jury was not wholly without evidence, or even wholly de-pendant upon the circumstance, that the mortgagee permitted possession to be retained by the mortgagor, contrary to what seemed to be the provision of the contract. Additional acts of the mortgagee may be adverted to, whereby harm has come to the purchaser. The mortgagee did not have his mortgage recorded, notwithstanding the positive injunctions of the Georgia Registry Acts, that all mortgages shall be recorded, but by keeping his lien secret, he has enabled the ' mortgagor to perpetrate a fraud. The recording done 31st *425 Oct. 1846, after the slave was taken back to Augusta, was no compliance with the registy Acts, nor any protection to the( purchaser, and is of no weight in the case. Notwithstanding the rights which he urges that the mortgagor had, under the renewal of the note, the mortgagee paid the renewal note, and seized the mortgaged chattel, before that note became due; and whilst he urges the fraudulent removal of the chattel from Georgia, as a justification of this course, he has given no account of the three horses, two wagons, fifteen hogs, beds and furniture, all which, with the slave, were contained in the mortgage, and which the innocent purchaser of the slave insists he should have looked to, before he disturbed the sale made by the mortgagor.
It has, neither in this Court, nor on ihe Circuit, been supposed that the defendant designed to commit any fraud; but the jury appear to have been well justified in believing that, by his conduct, his success and a fraud upon an innocent purchaser have become inseparable.
The motion is, therefore, dismissed.
Kichardson, J. — Evans, J. — Frost, J. — and Withers, J. — concurred.
■ Motion refused.